IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 3:22-cr-97-RAH-SMD |
| ) | |
| KAHLIA WASHINGTON ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court is Defendant Kahlia N. Washington's ("Washington") Motion to Suppress Evidence Obtained Through Execution of Title III Orders (Doc. 87). Washington asks the Court to "suppress all evidence of any kind and the fruits thereof, including any alleged physical evidence, statements, identification, and testimony" that were seized "during and subsequent to certain illegal wiretaps and intercepts involving Washington's telephone communications." Mot. (Doc. 87) p. 1. Having reviewed the filings of both Washington and the Government,[1] the undersigned recommends that Washington's

---

[1] The undersigned did not hold an evidentiary hearing in this matter because the question before the Court is whether, on its face, the affidavits supporting the Title III intercepts sufficiently alleged necessity under applicable law. *United States v. Perez*, 661 F.3d 568, 581-82 (11th Cir. 2011) (finding that the district court did not err in denying, without an evidentiary hearing, the defendant's motion to suppress wiretap evidence based on the necessity requirement); *United States v. Jackson*, 2015 WL 2236400, at *9 (M.D. Ga. May 12, 2015) (declining to hold an evidentiary hearing regarding a challenge to the necessity requirement of a Title III intercept because the court was "unconvinced that . . . an evidentiary hearing [was] needed on this issue.").

Importantly, Washington does not allege that the affidavit contained misleading information or that exculpatory evidence was omitted from it. Therefore, this Court can examine the four corners of the affidavits and rule on the existence of necessity without a hearing. *See United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir. 1985) (A court "may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief."); *United States v. Booker*, 2013 WL 2903562, at *2 n. 5 (N.D. Ga. June 13, 2013) ("The Court has broad discretion in its determination of whether an evidentiary hearing is required. . . . An evidentiary hearing is only required where 'the allegations of the moving papers, including affidavits if any are filed,

Motion be denied.

I.     **FACTUAL BACKGROUND**

On April 2, 2021, based on the affidavit of Drug Enforcement Agency Task Force Officer ("TFO") Ethan Wiggins, Chief United States District Judge Emily Marks issued an order authorizing the interception of wire and electronic communications over a cellular device, known as Target Telephone 1 ("TT1"). Aff. 1 (Doc. 106-2) p. 7; Applic. 1 (Doc. 106-1) p. 12. As a result of the wiretap, TFO Wiggins confirmed that the phone belonged to Andrea Franklin ("Franklin"), who was believed to be a large-scale drug dealer and the head of a drug trafficking organization ("DTO") in Phenix City, Alabama. Aff. 2 (Doc. 106-5) p. 14.

On May 7, 2021, the Government sought permission from the Court, based on a second affidavit from TFO Wiggins, to continue intercepting wire communications from TT1 and to conduct a wiretap on a cellular device known as Target Telephone 2 ("TT2"). *Id.* at 38, 70-71. TT2 belonged to Khourtney Brown, who was believed to be a methamphetamine supply source in Phenix City. *Id*. Judge Marks granted the application. Applic. 2 (Doc. 106-4).

The affidavit in support of the original Title III intercept of TT1 (the "original affidavit") provided TFO Wiggins's background and experience, Aff. 1 (Doc. 106-2) pp. 5-7; identified the targets of the wiretap and the goals of the investigation, *id.* at 7-12;

---

are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient *and factual issues are raised,* a hearing is required.") (citations omitted) (emphasis in original).

discussed at length the investigation of Franklin and others purportedly within his organization, *id.* at 13-27; and set forth the investigative techniques—including controlled purchases, confidential sources, and toll records—that were used to establish probable cause for the wiretap, *id.* at 27-43. The original affidavit also set forth the need for the wiretap due to the unavailability of other investigative techniques, which had been tried and failed, were unlikely to succeed, or were too dangerous to pursue. *Id.* at 44-63. Regarding these unavailable techniques, TFO Wiggins averred that

- physical surveillance of Franklin would likely be detected, *id.* at 45, 55-56;
- confidential sources, who purchased small amounts of narcotics from the DTO, would not be helpful in revealing all members of the conspiracy, *id.* at 45-48, 49-50;
- attempts to infiltrate the organization via undercover agents would be unsuccessful, *id.* at 48-49;
- out of loyalty or fear, witnesses would likely refuse to testify in grand jury proceedings, *id.* at 50-51;
- search warrants would not uncover the members of the DTO and would alert the DTO to the investigation, *id.* at 52-53;
- toll records, which would continue to be used, would not provide each conspirator's identity, his/her role in the DTO, the location of the illegal activity, the actual user of the telephone, or the contents of the call, *id.* at 53-54;

- trash searches could compromise the investigation and were unlikely to provide information, *id.* at 56-57;

- consensual recordings with a confidential source would be unlikely to reveal information about Franklin's drug-trafficking activities or associates due to the nature of the relationship between the confidential source and Franklin, *id.* at 58;

- arrests of targets were premature, and that conducting a "buy/bust" would not result in cooperation of conspirators, *id.* at 58-59;

- financial investigation would merely serve to compliment the investigation and not develop concrete evidence, *id.* at 59-60;

- the home at which a poll camera was installed became vacant after an occupant was murdered there, and the ability to install another one in an undetectable location was unlikely, *id.* at 60-61; and

- location information on TT1 is only mildly beneficial without the use of intercepts and physical surveillance, *id.* at 61.

TFO Wiggins's affidavit in support of the Government's request to extend the wiretap of TT1 and to wiretap TT2 (the "extension affidavit") provided the same or similar information as the original affidavit. *See generally* Aff. 2 (Doc. 106-5). Additionally, the extension affidavit included information discovered pursuant to the first wiretap, including phone conversations intercepted between Franklin and others discussing drug activity. *Id.* at 39-66. Like the original affidavit, the extension affidavit addressed the investigation's

use of informants, undercover agents, pen registers and toll record analysis, physical surveillance, and pole cameras, and explained how those techniques were insufficient to expose the means by which the DTO operates. *Id*. at 70-92.

## II.  APPLICABLE LAW

"A court's wiretap order issued pursuant to Title III enjoys a presumption of validity." *United States v. McIntyre*, 2018 WL 2051686, at *4 (M.D. Ala. Apr. 13, 2018) (citing *United States v. Weber*, 808 F.2d 1422, 1423 (11th Cir. 1987)). Therefore, a defendant bears the burden of overcoming this presumption. *McIntyre*, 2018 WL 2051686, at *4. "Evidence obtained by wiretap is subject to the Fourth Amendment's prohibition against unreasonable searches." *United States v. Goldstein*, 989 F.3d 1178, 1192 (11th Cir. 2021) A wiretap, therefore, must be supported by the same probable cause necessary to obtain a search warrant. *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 970 (11th Cir. 2016) (noting that the Government must show "all that the Fourth Amendment itself requires" to obtain a wiretap).

In addition to the protections afforded by the Fourth Amendment, "a wiretap is statutorily required to be justified by a showing of necessity." *Goldstein*, 989 F.3d at 1192. The "necessity requirement" demands that the Government's affidavit in support of a wiretap provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).[2] The "affidavit need not,

---

[2] This requirement ensures that "electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed." *United States v. Maxi*, 886 F.3d 1318, 1331 (11th Cir. 2018) (quotation

however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986). In other words, § 2518 "does not foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted; however, it does require the Government to show why alternative measures are inadequate for this particular investigation." *United States v. Leflore*, 653 F. App'x 703, 707 (11th Cir. 2016) (citations omitted); *see also United States v. Hyppolite*, 609 F. App'x 597, 606-07 (11th Cir. 2015) ("Section 2518 was not intended to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques."). Importantly, the fact that alternative investigative measures were partially successful does not necessarily render electronic surveillance unnecessary. *United States v. Harrell*, 635 F. App'x 682, 684-85 (11th Cir. 2015).

When determining if the necessity requirement is met, "courts must read supporting affidavits in a practical and commonsense fashion, and the district court is clothed with broad discretion in its consideration of the application." *United States v. Hawkins*, 934 F.3d 1251, 1258 (11th Cir. 2019). "Courts will not set unduly burdensome standards on the Government's demonstration that no reasonable alternative existed. . . . Indeed, the issuing judge has considerable discretion in deciding whether other investigative methods might

---

marks omitted).

have been successfully employed." *United States v. Thompson*, 2011 WL 4455244, at *4 (S.D. Fla. Mar. 31, 2011) (citations omitted). And, "courts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not." *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978).

**III.   ANALYSIS**

Washington argues that the Government failed to meet the necessity requirement for the original and extension wiretaps. Mot. (Doc. 87) p. 2. As discussed herein, Washington's argument fails to overcome the wiretap's presumption of validity.

**A.  Standing to Challenge the Wiretaps**

To contest a Title III wiretap, a defendant must first establish that she was an "aggrieved person." 18 U.S.C. § 2518(10)(a). As statutorily defined, an aggrieved person is any "person who was a party to an intercepted . . . communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). "Generally, to establish standing the movant must show that (1) he was a party to the communication, (2) the wiretap efforts were directed at him, or (3) the interception took place on his premises." *United States v. Faulkner*, 439 F.3d 1221, 1223 (10th Cir. 2006) (citation omitted). "Standing is not conferred on co-conspirators or co-defendants who are not parties to or targets of the intercepted communications merely because they are ultimately implicated by evidence obtained during the surveillance." *McIntyre*, 2018 WL 2051686, at *3 (citing

7

*United States v. Fredericks*, 586 F.2d 470, 480 (5th Cir. 1978)).[3]

Here, Washington claims that she has standing to contest the legality of "her wire or oral communications . . . because allegedly her phone number was the subject of intercepted communications, and the communications were unlawfully intercepted." Mot. (Doc. 87) p. 2. But the underlying wiretaps at issue involve TT1 and TT2, which belong to Franklin and Brown—not Washington—and Washington was not listed as a "Target Subject" in the relevant wiretap applications or orders. *See generally* Aff. 1 (Doc. 106-2) p.7; Aff. 2 (Doc. 106-5) p. 7. Notably, Washington has not identified any communications wherein she was captured in the wiretaps of TT1 or TT2. Accordingly, the undersigned finds that Washington has not carried her burden of showing that she is an aggrieved person. *See United States v. Montemayor*, 2018 WL 4517634, at *3 (N.D. Ga. Aug. 27, 2018) (finding that the defendant did not carry his burden to show that he is an "aggrieved person" with respect to wiretaps wherein the defendant "made vague references to being a participant in the conversations"). Nonetheless, given that Fourth Amendment standing is not jurisdictional, the undersigned will address the wiretaps as they pertain to any communications that Washington participated in.[4]

---

[3] Report and recommendation adopted by 2018 WL 2050153 (M.D. Ala. May 2, 2018) (Watkins, J.).

[4] For its part, the Government argues that Washington has failed to make a showing that she is an "aggrieved person" under 18 U.S.C. § 2518(10)(a). Resp. (Doc. 106) p. 3. But for the purposes of its response, the Government "assume[s] that [Washington] will be able to establish via a sworn affidavit or testimony at a hearing that she was a participant in each call that she seeks to suppress." *Id.*

### B. Necessity Requirement

Here, Agent Ethan Wiggins presented a sixty-seven-page affidavit to Chief United States District Judge Marks in support of the original Title III wiretap for Franklin's phone. Aff. 1 (Doc. 106-2). The affidavit included a thorough discussion of the targets and goals of the investigation, *see id.* at 7-26; a twenty-two-page summary of the investigative techniques— including multiple controlled buys and toll record analysis—that were used to establish probable cause to believe that TT1 was being used in drug trafficking operations, *id.* at 27-43; and a twenty-page analysis of the investigative techniques that have been tried and failed, the techniques that appear unlikely to succeed, and the techniques that are too dangerous to employ, *see id*. at 43-63. The original affidavit fully discussed the investigators' use (or intentional non-use) of alternative investigative options such as undercover agents; cooperating individuals; interviews of subjects or associates; grand jury proceedings; search warrants; pen registers and other toll analysis; conventional physical surveillance; trash searches; interception of digital paging devices; consensual recordings; arrests of targets; financial investigation; and pole cameras. *See id*. The original affidavit described in detail the successes and failures yielded so far by each investigative technique and discussed the specific reasons why the agents believed that those techniques, while in many instances productive, remained inadequate to develop a complete picture of the drug trafficking activities associated with Franklin and others within the DTO. *See id.* TFO Wiggins's extension affidavit contained the same or similar information provided in the original affidavit along with additional evidence that was gathered from the original wiretap. *See generally* Aff. 2 (Doc. 106-5).

After a thorough review of the wiretap applications at issue, the undersigned concludes that the Government met its burden to show that the wiretaps were necessary. Specifically, a review of TFO Wiggins's affidavits show that the wiretaps were not the first step of the investigation, and that other investigative techniques were tried and failed, were unlikely to succeed, or were too dangerous to employ. Indeed, the affidavits "contained extensive discussions of alternative investigative techniques," and "adequately explained why those techniques were too risky or ineffective." *Leflore*, 653 F. App'x at 707. The fact that some of the alternative investigative measures were partially successful did not render electronic surveillance unnecessary. *Harrell*, 635 F. App'x at 685.

Further, the undersigned notes that the underlying investigation involved an alleged DTO with multiple conspirators. The Eleventh Circuit has recognized that "alternative investigative measures such as Government informants and physical surveillance, while successful in obtaining some information, can be insufficient for agents to determine all the methods, patterns, and members—in short, the full scope—of the drug distribution conspiracies." *United States v. Holden*, 603 F. App'x 744, 750 (11th Cir. 2015). Thus, considering the nature of the alleged crimes along with the thorough information provided by TFO Wiggins in the affidavits, the undersigned is persuaded that, "[w]ithout the use of electronic surveillance, law enforcement would [be] unable to ascertain the relationships between the defendants and their roles within the conspiracy." *Hyppolite*, 609 F. App'x at 607. Therefore, the undersigned concludes that the Title III affidavits in support of the TT1 and TT2 wiretaps adequately established necessity under the law. As such, any

communications obtained pursuant to those wiretaps that implicate Washington and her alleged role in the conspiracy should not be suppressed.

## IV.   CONCLUSION

For the foregoing reasons, it is the

RECOMMENDATION of the undersigned Magistrate Judge that Washington's Motion to Suppress (Doc. 87) be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 2, 2022.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 19th day of July, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE